**IN THE COURT OF APPEALS OF IOWA**

No. 23-0146
Filed April 12, 2023

**IN THE INTEREST OF H.H.,**
**Minor Child,**

**P.H., Father,**
    Appellant,

**D.G., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Jennifer S. Bailey, District Associate Judge.

A mother and father each appeal the termination of their parental rights to a child. **AFFIRMED ON BOTH APPEALS.**

Eric D. Tindal, Iowa City, for appellant father.

Heidi D. Van Winkle of Van Winkle Law Office, Burlington, for appellant mother.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Kimberly Auge of The Auge Law Firm, Fort Madison, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

Both the father and the mother appeal the termination of their parental rights to the child, H.H. They argue the State failed to prove all grounds included in the termination petition, the State failed to provide reasonable efforts toward reunification, they should have been granted a six-month extension to work toward reunification, termination was not in the child's best interests, and the juvenile court should have exercised the statutory exception to termination found in Iowa Code section 232.116(3)(c) (2022). Because the parents challenge only one of the grounds for termination, the department met its obligation to make reasonable efforts at reunification, a six-month extension would not alleviate the concerns preventing reunification, termination is in the child's best interests, and no statutory exception should prevent termination, we affirm.

**I. Background Facts and Prior Proceedings.**

The child was born prematurely in August 2021 and, after a stay in the neonatal intensive care unit, went home with the parents in September with no lingering concerns. But that October, the parents brought the child to their local emergency room with difficulty breathing, eventually requiring the child to be taken by helicopter to University of Iowa Hospitals (UIHC). The father initially stated that the child began choking partway through an overnight feeding. And although the father attempted to clear her airway, she continued to have intermittent periods of choking causing her to go limp. After fifteen minutes of the child's respiratory distress, he woke the mother, who decided they needed to take the child for medical attention.

Doctors at UIHC determined the child had three head injuries at varying stages of healing[1] as well as retinal bleeds—the child was having seizures and required intubation and tube feeding. They found no medical reason for the injuries and believed them non-accidental and indicative of physical abuse. Further, the parents could not explain how the injuries occurred. The medical team alerted the Iowa Department of Health and Human Services of their concerns. With no explanation for how the child was harmed, the child was removed from the parents' care and adjudicated a child in need of assistance. The parents were ordered, among other things, to complete comprehensive mental-health evaluations and abide by their recommendations, actively participate in services necessary for the child, comply with random drug testing, participate in parenting services, and work on the mother's over-dependence on the father. By all accounts, the parents were largely compliant with services and consistently attended and participated in the child's medical and physical therapy appointments. In the months leading up to the termination hearing, it was noted the child would cry whenever she left the parents. But, because the parents were still unable to explain the cause of the child's injuries, all visitation was supervised.[2]

In July 2022, both parents tested positive for marijuana. The parents told different stories at different times about how often they used,[3] but no further

---

[1] One doctor opined the injuries occurred in multiple events in the seven days leading up to the child's hospitalization.

[2] The service provider charged with supervising their visitation described the parents as "the poster child for being ready and prepared for visits."

[3] The juvenile court, in its termination order, stated "[t]he court does not find their consumption of marijuana to be a significant safety concern, but does highlight a dysfunctional method of dealing with stressors."

evidence of use was presented to the juvenile court. No recommendation for substance-abuse treatment came from either of their court-ordered evaluations.

By the time of the termination hearing, the child was fourteen months old and faced speech, intellectual, gross motor skill, and fine motor skill delays as a result of the injury; the department social worker testified the child was at a three-to-six-month developmental stage. In August 2022, ten months after the department became involved, the parents first pointed to a brief interaction the child had with her maternal aunt—they reported the aunt had been changing the child's diaper two days before the child's admission to the hospital when the child screamed loudly. The district court explicitly discredited this explanation given the length of time it took for the parents to offer it, but also doubted that the aunt had the motive to injure the child or that it would have led to such a delayed display of symptoms.[4]

The mother and father both contested the grounds for termination and argued termination was not in the best interests of the child, the State failed to make reasonable efforts toward reunification, the closeness of their bond would make termination detrimental to the child, and that they should have six additional months to work toward reunification. The juvenile court ultimately terminated both parents' rights to the child; now, both parents appeal.

---

[4] When the parents were first asked, upon the child's admission to the hospital, who had been alone with the child, they noted the maternal aunt had been around the child, but they did not report any concerns with the child's behavior after the interaction. The suspicions were passed onto law enforcement.

**II. Analysis.**

The parents offer nearly identical arguments on appeal, so we address them together. Though the juvenile court terminated under both Iowa Code section 232.116(1)(d) and (h), the parents only challenge (h); but, "we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010); *see also In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (finding the court did "not have to discuss this step" where the parent did not dispute the existence of at least some of the statutory grounds); *see, e.g.*, *In re G.N.*, No. 20-1128, 2020 WL 7022388, at *1 (Iowa Ct. App. Nov. 30, 2020) (collecting cases).

However, we begin with each parent's argument that the department failed to make reasonable efforts at reunifying them with the child, as a reasonable-efforts challenges implicates both section 232.116(1)(d) and (h) and the reasonable-efforts requirement "impacts the burden of proving those elements of termination which require reasonable efforts." *In re C.B.*, 611 N.W.2d 489, 492, 493 (Iowa 2000). In challenging the grounds for termination under section 232.116(1)(h), the parents claim that the department failed to make reasonable efforts—namely, expanded visitation—simply because the parents would not identify who injured the child. The parents raised the issue to the juvenile court, and the juvenile court addressed in its dispositional order filed in May 2022 and again in its termination order. Insofar as the parents are making a reasonable-efforts argument in their petitions on appeal, "in making reasonable efforts to provide services, the State need not search for unavailable services. This is especially so when a parent, as in the present case, presents the awesome

challenge of getting treatment for a deficit the parent claims he does not have." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002); *see In re M.P.*, No. 19-0995, 2019 WL 5063337, at *4 (Iowa Ct. App. Oct. 9, 2019) (noting that a father who was accused of sexual assault could not take issue with being ordered to complete an initial step toward treatment that did not suit his taste because "the reasonable-efforts mandate does not create a menu from which discerning parents may order specific services. Rather, it is intended to provide services that facilitate reunification given the parent's circumstances"). Without knowing what services were appropriate due to the parents' unwillingness to disclose what happened to their child, the department's hands were tied in providing the necessary services to address the protection of the child. And, even if the parents had received expanded visitation, it would not be enough to ensure the child would be safe in the parents' long-term care. *See In re M.L.*, No. 11-1326, 2011 WL 5389620, at *4 (Iowa Ct. App. Nov. 9, 2011) ("The fact remains that the parents have 'no insight in what happened so that it's not going to happen again.' Without that insight, the services provided to, and received by, the parents cannot ensure that an abused child . . . would be safe."). We find the State made reasonable efforts.

So, we move instead to the parents' other arguments: (1) the juvenile court should have granted them additional time toward reunification, (2) termination is not in the child's best interests, and (3) the district court should have employed the statutory exception to termination found in section 232.116(3)(c). Our review is de novo. *P.L.*, 778 N.W.2d at 40.

*a. Six-Month Extension.*

Both parents ask for a six-month extension to work toward reunification, arguing their only barrier is their inability to name who harmed the child. The juvenile court can grant such an extension only if it can "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Here, the juvenile court could not make such a ruling—with such substantial injuries, the parents had no additional credible information about what happened to their child than they did in October 2021,[5] and they were no closer to revealing that information. *See C.B.*, 611 N.W.2d at 495 ("Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency."); *P.L.*, 778 N.W.2d at 39 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."). And, as the department's social worker testified, the department was unable to tailor services for the parents or ensure the child's injuries would not be repeated without knowing what harm was done to the child.

It is true "we do not require compliance for compliance's sake," *In re G.B.*, No 22-0439, 2022 WL 1657190, at *5 (Iowa Ct. App. May 25, 2022), and "[the State] may not specifically require an admission of guilt" without infringing on the

_____

[5] Though we are not bound to the juvenile court's credibility findings, we do give them particular weight. *D.W.*, 791 N.W.2d at 706.

parents' right against self-incrimination, *C.H.*, 652 N.W.2d at 150. But "[a] parent's failure to address his or her role in the abuse may hurt the parents' chances of regaining custody and care of their children [and] 'these consequences lie outside the protective ambit of the [right against self-incrimination].'" *C.H.*, 652 N.W.2d at 150 (citation omitted). "[A] person's exercise of a constitutional right may indeed have consequences. One such consequence may be a person's failure to obtain treatment for his or her problems." *Id.* Because the parents have yet to overcome this initial hurdle that allows a path to correcting the issues leading to termination, the juvenile court could not outline specific steps toward changes that would allow the child to be returned to the parents after six months.

*b. Best Interest.*

The parents next argue that termination is not in the best interests of the child because it is not the least restrictive option. But, in determining the child's best interests, we set our main focus "to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). And "[w]hen making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). It is not lost on us that the child's physical therapist and a number of service providers,[6] in their testimony, extoled the parents' engagement in services, parental intuition about the child's needs, and commitment to her continued development; we have no doubt that the

---

[6] Despite recognizing the parents' strengths and growth, the providers were not in agreement about whether or not termination was the safest option for the child.

parents have gone to great lengths to reunite with the child.  But even considering the skills the parents have demonstrated, their inability to explain the major injuries caused to the child leaves us without any assurance that they will not allow further injury to befall the child.  In contrast, the child is in a pre-adoptive foster home where the foster parents have experience with children with special needs; and, testimony at the termination hearing revealed a strong bond between the child and the foster family.  As such, we agree with the juvenile court that it is in the child's best interests to terminate both the mother and father's parental rights.

*c. Statutory Exceptions.*

Finally, the parents both broadly argue the juvenile court should have avoided termination by using the statutory exception found in Iowa Code section 232.116(3)(c).  The exception allows the court not to terminate if "[t]here is clear and convincing evidence that termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."  The parent urging the exception bears the burden of proving it applies.  *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018).  While it is clear that the parents are devoted to the child and the child is bonded to the parents, the parents present no evidence that the bond overcomes the detriment posed to the child by unresolved issues of physical abuse or protective capacity.  We decline to use the statutory exception.

**III. Conclusion.**

Because the parents do not dispute one of the grounds for termination, the State made reasonable efforts toward reunification, a six-month extension would not alleviate the concerns preventing reunification, termination is in the child's best

interests, and no statutory exception should prevent termination, we affirm on both appeals.

**AFFIRMED ON BOTH APPEALS.**